**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 16-cv-02744-MSK-KMT

JANE ROE #1, and
JANE ROE #2,

      Plaintiffs,

v.

CARLOS MINGUELA,
MIKE ENSMINGER,
JASON MIKESELL,
ELIZABETH ROBINSON,
TYLER TURNER,
DAVID SLOAN,
PATRICK BAST,
STEVE DAVIDSON,
JACLYN GAFFNEY, and
BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF TELLER,
COLORADO

      Defendants.

---

**OPINION AND ORDER GRANTING IN PART MOTIONS TO DISMISS, DENYING
MOTION TO CONSOLIDATE, AND GRANTING MOTION FOR APPOINTMENT OF
COUNSEL**

---

      **THIS MATTER** comes before the Court on Defendant Steve Davidson's Motion to

Dismiss the Second Amended Complaint (**#72**), Ms. Roe's[1] Response (**#86**), and Mr. Davidson's

---

[1]     Plaintiff Roe #2 has resolved all of her claims against all Defendants other than Mr.
Minguela (**# 103**). Because Mr. Minguela is not a movant at this time, the Court is not called
upon to assess Ms. Roe #2's remaining claims against him. Thus, the Court's references to "Ms.
Roe" in this Opinion should be understood to refer to Ms. Roe #1. To the extent that Ms. Roe #2
is herself a movant, the Court's analysis with regard to Ms. Roe #1's motions applies with equal
force to Ms. Roe #2's motions.

Reply (**#94**); Defendant Tyler Turner's Motion to Dismiss the Second Amended Complaint (**#73**), Ms. Roe's Response (**#87**), and Mr. Turner's Reply and Amended Reply (**#93, 95**); the Board of County Commissioners of the County of Teller, Colorado's ("the Board") Motion to Dismiss the Second Amended Complaint[2] (**#75**), Ms. Roe's Response (**#84**), and the Board's Reply (**#91**); Elizabeth Robinson, David Sloan, Patrick Bast, and Jaclyn Gaffney's (collectively, "the co-worker deputies") and Mike Ensminger, Jason Mikesell's Motion to Dismiss the Second Amended Complaint (**#76**), Ms. Roe's Response (**#85**), and the co-worker deputies' and Mr. Ensminger and Miskell's Reply (**#92**); the Plaintiffs' Motion to File under Seal and Request to Proceed Using Pseudonyms (**#2**), the Board and Mr. Ensminger's Response (**#12**), and the Plaintiffs' Reply (**#13**); Mr. Minguela's Motion to Appoint Counsel (**# 97**), to which no response was filed; and the Defendants' Motion to Consolidate (**# 98**) this action with *Roe v. Minguela et al.*, D.C. Colo. Civ. Case No. 17-cv-2901-WYD, the Plaintiffs' response (**# 100**), and the Defendants' reply (**# 102**).

## FACTUAL ALLEGATIONS

The Court provides a brief summary of the Second Amended Complaint's (**# 69**) allegations here and elaborates as necessary in its analysis.

In 2015, Plaintiffs Jane Roe #1 and Jane Roe #2 were incarcerated in the Teller County Detention Center ("the Jail"). They contend that Defendants Carlos Minguella, Tyler Turner, and Steve Davidson – all Sheriff's Deputies employed at the Jail – regularly engaged in offensive

---

[2]     The Board previously filed its Motion to Dismiss First Amended Complaint (**#57**) in which it raises the same arguments as its Motion to Dismiss Second Amended Complaint. Inasmuch as the Plaintiffs have filed a Second Amended Complaint and the Board has filed a motion to dismiss that complaint, the Board's Motion to Dismiss First Amended Complaint is denied as moot.

conduct directed at female inmates.  Among other things, the Roes allege that these Deputies would enter female cells unannounced and observe or patrol shower areas and bathrooms with the intention of observing the female inmates in states of undress, made "lascivious comments"[3] about the female inmates, asked female inmates to "dance provocatively," and attempted to cultivate sexual relationships with female inmates.  The Roes allege that the co-worker deputies were aware of Mr. Minguela, Mr. Turner, and Mr. Davidson's behavior, yet failed to report it to supervisors.

Ms. Roe contends that, after complaining about the comfort of the beds at the Jail, she was reassigned to a pod with only a few other residents, making her a target for Mr. Minguela's advances.  On December 16, 2015, Mr. Minguela entered the shower area and leered at her while she attempted to cover herself with a towel.  Shortly thereafter, Mr. Minguela entered Ms. Roe's room and "compelled [her] to perform a sex act on him."  She alleges that Mr. Minguela then boasted about the encounter to Mr. Turner and other deputies.  The Court understands Ms. Roe to allege that none of the Defendants reported Mr. Minguela's boasting to Jail authorities.  (Ms. Roe #2 alleges that, on one occasion, Mr. Minguela groped her, but the Second Amended Complaint does not indicate whether this event occurred before or after the events with Ms. Roe #1.)

Based on these allegations, Ms. Roe asserts four claims for relief, all pursuant to 42 U.S.C. § 1983: (i) a broad claim, invoking the Equal Protection clause, the Due Process clause, the 8th Amendment's protection against Cruel and Unusual Punishment, and an unspecified

---

[3]     The sole concrete examples of such comments in the Second Amended Complaint is that Mr. Minguella would say that "Boulder girls are sluts" or "Boulder girls are easy," knowing that both Roes were from Boulder County.

constitutional right to "bodily integrity," against Mr. Minguela for "engag[ing] in a persistent pattern of sexual harassment, sexual assault, and sexual misconduct against [her]" and against Mr. Turner and the co-worker deputies for "knowingly participat[ing] in such conduct and/or assist[ing]" Mr. Minguela by moving Ms. Roe to a less-populated pod, ignoring Mr. Minguela's harassing comments and actions, and allowing Mr. Minguela opportunities to have isolated contact with inmates knowing the likelihood that he would commit sexual assault; (ii) a claim against all Defendants for "failure to investigate and report," invoking an unspecified Constitutional right, in that Mr. Minguela "engaged in a continuing, widespread, and persistent pattern of misconduct" and that the remaining Defendants had notice of Mr. Minguela's conduct and were "deliberate[ly] indifferent" to it or gave "tacit authorization" to such conduct; (iii) a claim that all Defendants, with deliberate indifference, failed to protect Ms. Roe from a risk of sexual assault, presumably in violation of the 8th Amendment; and (iv) a *Monell*-type claim that Defendants Ensminger and Mikesell (the past and current Sheriffs of Teller County) and the Board are liable for failing to adequately train and supervise the Jail's staff.[4]

The co-worker deputies, Mr. Turner, and Sheriff Mikesell have moved to dismiss the claims against them in their individual capacities under Federal Rule of Civil Procedure 12(b)(6),

---

[4] In her response to Defendants Ensminger, Mikesell, and the co-worker deputies' Motion to Dismiss Second Amended Complaint (**#85**), Ms. Roe clarifies that she was a post-conviction detainee at the time that the events alleged in the Second Amended Complaint occurred. She also clarifies that her due process claims are claims for deliberate indifference and concede that they are governed "under essentially the same 'deliberate indifference' standards [under the Eighth Amendment]." Under long-standing precedent, the Due Process Clause of the Fourteenth Amendment protects pretrial detainees from cruel and unusual punishment while the Eighth Amendment protects convicted prisoners, but the analysis is identical as to each claim. *See Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999) (*citing Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)). Inasmuch as Ms. Roe was a convicted prisoner, the Eighth Amendment governs her claims, and the same standard would govern even if they arose under the Due Process Clause, Ms. Roe's Due Process claims are redundant, and the Court dismisses them as superfluous.

asserting that they are entitled to qualified immunity. Sheriff Ensminger, Sheriff Mikesell, and the Board have moved to dismiss the claims against them under Rule 12(b)(6) on grounds that the Second Amended Complaint's allegations are insufficient to state claims against them in their official capacities

## ANALYSIS

### A. Standard of Review

#### 1. Generally

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). The Court must limit its consideration to the four corners of the Complaint, any documents attached thereto, and any external documents that are referenced in the Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678-79. The Court takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" or whether the claim being asserted is

merely "conceivable" or "possible" under the facts alleged. *Id.* What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

### 2. Qualified Immunity

Under the doctrine of qualified immunity individual government actors are protected from civil liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts a qualified immunity defense in a motion to dismiss, the Court determines (1) whether a complaint's allegations are sufficient to show that the defendant violated a constitutional or statutory right and (2) whether the constitutional or statutory right was clearly established when the alleged violation occurred. *See Peterson v. Jensen*, 371 F.3d 1199, 1202 (10th Cir. 2004). The Court may undertake these two inquiries in whichever order it deems fit. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). For all practical purposes, the first inquiry is indistinguishable from the inquiry that the Court would take in assessing a garden-variety challenge under Federal Rule of Civil Procedure 12(b)(6) to the sufficiency of the pleadings. *See Saucier v. Katz,* 533 U.S. 194, 201 (2001). The "clearly established" inquiry for qualified immunity examines whether the contours of the constitutional right were so well-settled, in the particular circumstances presented, that "every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards,* 132 S. Ct. 2088, 2093 (U.S. 2012).

## B. Defendants' motions

### 1. Eighth Amendment claims

The co-worker deputies, Mr. Turner, and Sheriff Mikesell argue that they are entitled to qualified immunity as to Ms. Roe's failure to protect claims. They argue that the Second Amended Complaint's allegations do not sufficiently allege a constitutional violation, and if they do, any such violation is not clearly established.

### (a) Against the co-worker deputies

The Eighth Amendment protects convicted prisoners from cruel and unusual punishment. This includes the right to be free from sexual assaults, and jail and prison officials must act reasonably to protect them from such assaults. *See Farmer v. Brennan*, 511 U.S. 825, 882-83 (1994); *Tafoya v. Salazar,* 516 F.3d 912, 916 (10th Cir.2008) (*citing Hovater v. Robinson,* 1 F.3d 1063, 1068 (10th Cir.1993)). However, the fact that an inmate has been sexually assaulted by a third person does not necessarily give rise to liability for a supervising official. *See Hovater*, 1 F.3d at 1066. A prison official is liable for an assault committed by a third person only where two requirements are met: (i) the inmate shows that she was incarcerated under conditions "posing a substantial risk of serious harm"; and (ii) the inmate shows that the official being sued acted in response to that risk with a "sufficiently culpable state of mind"—namely, with "deliberate indifference to inmate health and safety." *Farmer*, 511 U.S. at 834. In this context, "deliberate indifference" means that the official both subjectively knew of the risk posed to the inmate and that the official nevertheless elected to ignore that risk. *Id.* at 837. The official's knowledge of the risk may be shown by alleging that the third party who committed the assault had previously engaged in a pattern of unconstitutional behavior and that the official was aware of such behavior. *See Barney v. Pulsipher*, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

Turning first to the claims against the co-worker deputies, the Court need not determine whether Ms. Roe's allegations against them suffice to state a claim for violation of the Eighth

Amendment; instead, the Court turns first to the question of whether the contours of any such claim are "clearly established." The burden is on Ms. Roe to point to Supreme Court or Tenth Circuit precedent (or the clear weight of other circuit courts) that recognizes that the circumstances presented here would constitute a constitutional violation. *Schwartz v. Booker,* 702 F.3d 573, 587–88 (10th Cir. 2012); *see also Thomas v. Durstanti,* 607 F.3d 655, 669 (10th Cir.2010). She need not adduce a case with identical facts, but must show that "a precedent involves '<u>materially similar conduct</u>' or applies 'with <u>obvious clarity</u>' to the conduct at issue." *Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017) (quoting *Estate of Reat v. Rodriguez*, 824 F.3d 960, 964-65 (10th Cir. 2016)). For example, it is not sufficient to ask whether it is "clearly established" that the Fourth Amendment prohibits the use of excessive force in effecting an arrest; rather, the court examines whether that constitutional principle has previously been found to prohibit particular behavior such as "shoot[ing] a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight." *Brosseau v. Haugen* 543 U.S. 194, 198–200 (2004).

For purposes of assessing whether Ms. Roe can show that her Eighth Amendment claim against the co-worker deputies is "clearly established," the Court pauses here to identify the particular distinguishing characteristics of such her claim. First, the crux of the claim is that the co-worker deputies were aware of Mr. Minguela engaging in sexually-inappropriate behavior towards female inmates, but that they failed to report that behavior to Mr. Mingeula's supervisors or other Jail officials. Ms. Roe has not alleged that the co-worker deputies themselves had the power to discipline Mr. Minguela, only that they should have reported his conduct to their mutual superiors in the hopes that the superiors would act to curtail it. Moreover, it is important to recognize that Ms. Roe seeks to hold the co-worker deputies

responsible for Mr. Minguela's sexual <u>assault</u> against her, based solely upon knowledge that Mr.

Minguela engaged in <u>non-physical</u>, inappropriate, conduct of a sexual nature – *e.g.* attempting to

observe female inmates in states of undress, asking female inmates to dance provocatively, etc.

This distinction is significant because it suggests that the co-worker deputies should have

inferred that Mr. Minguela's  <u>non-physical</u> sexual conduct towards female inmates gave reason

to believe that he was likely to engage in <u>physical</u> conduct by assaulting Ms. Roe.

Ms. Roe cites to five cases: *Ortiz v. Jordan*, 562 U.S. 180 (2011); *Keith v. Koerner*, 707

F.3d 1185 (10th Cir. 10th Cir. 2013); *Tafoya v. Salazar*, 516 F.3d 912 (10th Cir. 2008); *Gonzales

v. Martinez*, 403 F.3d 1179, 1187 (10th Cir. 2008), and *Hovater v. Robinson*, 1 F.3d 1063 (10th

Cir. 1993).[5]  None of these cases are factually similar to this matter.   The Court examines each

in turn.

In *Ortiz*, while incarcerated, Ortiz was sexually assaulted by a guard on two consecutive

nights.  After the first assault, the guard told Ortiz that he would "see her tomorrow."  She

reported what happened to her case manager, but the case manager did not immediately inform

her superiors or file a report.  The guard again sexually assaulted Ortiz.  Although it shares some

factual similarities to the instant case, *Ortiz* was decided by the Supreme Court on procedural

grounds – namely, whether a party may appeal the denial of summary judgment after a full trial

---

[5]       Subsequently, Ms. Roe filed a Notice of Supplemental Authority, informing the Court of the 10th Circuit's decision in *Poore v. Glanz*, 724 Fed.Appx. 635, (10th Cir. Feb. 5, 2018).  In *Poore*, the inmate plaintiff alleged that Bowers, a prison guard, entered her cell and groped her on more than 50 occasions, watched her shower, and demanded sexual favors from her on 15 occasions.  She did not report these events to anyone, and prison officials first became aware of them after Poore's release.  An investigation revealed that several of Bowers' co-workers were aware of certain aspects of the abuse, but failed to report it.  Notably, however, these co-workers were not named as defendants in Poore's subsequent lawsuit.  Because *Poore* does not consider whether the co-workers could be held constitutionally liable for their inaction, it does not clearly establish a basis for co-worker liability here.

has been had on the merits. The Court was not asked to opine as to whether Ortiz had stated a colorable Eighth Amendment claim against Jordan, and it did not render any opinion on the question; rather, it remanded the qualified immunity question back to the Circuit Court to consider.[6] *Ortiz* is also distinct from the instant case on one of the important points noted above: the case manager was informed by the inmate that the guard had physically assaulted Ortiz on the first night. In contrast, here, Ms. Roe reported no incident to anyone and there is no allegation that the co-worker deputies were aware that Mr. Minguela had engaged in inappropriate physical contact with any inmate before Ms. Roe. Instead, the Second Amended Complaint alleges that the co-worker defendants should have anticipated a future physical sexual assault based on Mr. Minguela's inappropriate, but non-physical and non-assaultive, behavior directed at female inmates. Thus, the Court cannot say that *Ortiz* clearly establishes the Eighth Amendment claim Ms. Roe asserts against the co-worker deputies.

In *Keith,* Keith was participating in vocational training while she was incarcerated. In 2007, her vocational training instructor had sexual relations with and impregnated her. Keith filed suit against the prison warden, alleging that he promulgated or was responsible for a policy that led to the instructor's assault. The trial court rejected the warden's invocation of qualified immunity, and on appeal, the 10th Circuit affirmed. It found that Keith had alleged that there were 54 incidents of sexual misconduct and 33 incidents of undue familiarity at the prison between 2005 and 2009, that discipline in response to these incidents was inconsistent, that structural policy problems (the failure to address known problems with the vocational training program and the failure to effectively use cameras to monitor staff and inmate) contributed to the

---

[6]     It does not appear that the Circuit Court ever issued any further rulings in the case.

unlawful sexual conduct at issue, and that there were no training programs tailored to the prison's all-female population. 707 F.3d at 1188-89.

Keith is distinguishable from the instant case in two important respects. First, the claim in *Keith* was against a prison warden and based on his own failure to implement policies to protect inmates against sexual assaults. Such claims are governed by a different analysis than claims like those asserted by Ms. Roe against the co-worker deputies, who are accused simply of failing to report their knowledge of Mr. Minguela's activities to supervisors. In other words, a failure to report is not the same as a failure to supervise. Second, *Keith* is distinguishable insofar as it appears that Koerner apparently had personal knowledge of <u>actual</u> sexual assaults occurring at the prison; here, Ms. Roe argues that the co-worker defendants should have <u>anticipated</u> a sexual assault by Mr. Minguela because he otherwise behaved inappropriately, not that the co-worker defendants knew that Mr. Minguela had committed sexual assaults in the past. Thus, the Court cannot say that *Keith* clearly establishes the Roes' claim against the co-worker deputies here.

In *Tafoya*, Tafoya was sexually assaulted twice by the same guard while incarcerated at the Huerfano County Jail. She filed suit against the sheriff and supervisory officials at the jail. Much like *Keith*, *Tafoya* concerned the question of whether the sheriff had properly exercised his supervisory authority to prevent sexual assaults on inmates by jail staff after he learned of several assaults. For the same reasons as *Keith,* then, *Tafoya* inapposite. An inquiry into whether a supervisor properly exercised corrective authority over his subordinates in response to actual instances of sexual assault presents a different question than whether co-workers may be held liable for not reporting non-physical conduct that might suggest a risk of a future physical assault.

*Gonzales* preceded *Tafoya*, and also involved claims against the sheriff arising from sexual assaults at the Huerfano County Jail. There are certain factual similarities to the instant case – *e.g.* allegations that one of the deputies committing the assaults had previously exposed himself to female inmates and would ask female inmates to show their breasts – but the issues in *Gonzalez* involved questions of supervisors' liability for failure to impose discipline, not co-workers' liability for failure to report. Accordingly, *Gonzalez* fails to clearly establish recognition of a claim based on the facts alleged here.

Finally, the inmate plaintiff in *Hovater* was sexually assaulted by a guard when she was an inmate in the Sedgwick County Jail. She immediately reported the assault. The local sheriff immediately investigated the alleged conduct, and Hovater was not assaulted again. The 10th Circuit found that the sheriff was entitled to qualified immunity because he had no basis to anticipate that the guard would assault anyone. Indeed, Hovater's only contention on this point was the general assertion that allowing a male guard to be alone in a room with a female prisoner posed an unreasonable risk of an assault occurring. The 10th Circuit rejected this argument, finding that "a constitutional violation may not be established by a reliance upon unsupported assumptions." Moreover, it does not involve allegations of co-worker liability. Thus, *Hovater* is not sufficient to clearly establish that conduct by the co-worker deputies in this case gives rise to a constitutional violation.

The Court finds that Ms. Roe has not carried her burden to show that the Eighth Amendment claim she seeks to assert against the co-worker deputies was "clearly established." Accordingly, the co-worker deputies are entitled to qualified immunity on the claim, and it is therefore dismissed against the co-worker deputies.

**(b) Against Mr. Turner**

Mr. Turner also seeks dismissal of the Eighth Amendment claim against him on qualified immunity grounds. The Court finds that Ms. Roe has adequately alleged facts that suggest that Mr. Turner was aware of the risk that Mr. Minguela would sexually assault female prisoners like her. In addition to alleging that Mr. Turner was aware of (and indeed participated in) Mr. Minguela's practice of observing undressed female inmates and of making inappropriate sexual comments towards them, the Second Amended Complaint also alleges that Mr. Turner was aware of situations in which Mr. Minguella "kiss[ed] and/or attempted to kiss" an inmate and attempted to "make inappropriate sexual contact" with an inmate (including "touching her bottom [and] attempting to touch her breasts and vagina"). Thus, taking the Second Amended Complaint in the light most favorable to Ms. Roe, she has alleged that Mr. Turner was actually aware of Mr. Minguella committing physical assaults on female inmates prior to his assault on Ms. Roe. The Court is satisfied that these allegations suffice to state an Eighth Amendment claim against Mr. Turner.

The question, then, is whether Mr. Turner's conduct violated Ms. Roe's clearly established rights. Ms. Roe relies on the same cases cited above. Unlike the situation with the co-worker defendants, there is evidence that Mr. Turner knew that Mr. Minguela had actually sexually assaulted (or at least attempted to assault) female prisoners in the past. This brings the Eighth Amendment claim against him closer to those such as *Gonzalez* and *Tafoya*, where knowledge of prior assaults by a guard triggered a duty on the part of the prison official to act in order to prevent future assaults. But those cases examined the liability that a <u>supervisor</u> has when he or she fails to take corrective action against a prison officer who is known to have engaged in sexual assault; the cases do not address the liability that a <u>co-worker</u> has to report knowledge of such events. A potent argument could be made that a supervisor's ability to

immediately correct a subordinate's misconduct creates a different constitutional obligation than does a co-worker's ability to simply inform others of that misconduct. Thus, the Court finds that Ms. Roe has not come forward with authority that clearly establishes Mr. Turner's constitutional liability to her under the specific circumstances presented. Accordingly, Mr. Turner is entitled to qualified immunity, and the Court dismisses the Eighth Amendment claim him.

### c. Against Sheriff Mikesell

Sheriff Mikesell argues that the Second Amended Complaint fails to show that he subjectively knew that Mr. Minguela posed a risk of sexually assault to Ms. Roe. According to the Second Amended Complaint, at that time, he was a commander at the jail with supervisory authority over Mr. Minguela and the other deputies herein. However, there are no allegations that anybody informed him of Mr. Minguela's conduct prior to the assaults on the two Plaintiffs. In absence of such allegations, the Second Amended Complaint fails to show that he subjectively knew of the threat Mr. Minguela posed to female inmates. Thus, it fails to state claims under the Eighth Amended against Sheriff Mikesell.

*Poore* does not alter this analysis. There, Poore sued the sheriff in control of the jail for a sexual assault by a jail deputy. Notably, the sheriff made various decisions that, by his own admission, violated established jail policies. He acknowledged that he was aware of a prior incident in which a male prison guard engaged in inappropriate conduct similar to that by the guard who assaulted Ms. Poore, and that despite that knowledge, did not make any changes to the way female inmates were supervised. 724 Fed.Appx. at 640. *Poore* thus differs from this case in significant respects. For example, in *Poore*, the 10th Circuit noted that "many of our prior cases in which a supervisor was held liable for sexual misconduct involved prior instances of abuse." *Id.* at 641, *citing Tafoya* and *Gonzales*. "But," the court went on, "Poore did present

evidence of a prior instance of sexual misconduct" that the sheriff "was aware [of]." *Id.* Here, Ms. Roe has not alleged that Sheriff Mikesell was aware of inappropriate conduct by Deputy Minguela or anyone else toward female inmates prior to the assaults. Ms. Roe has alleged facts that suggest that Sheriff Mikesell <u>should</u> have been aware of inappropriate conduct, in that Mr. Minguela and other deputies engaged in that conduct openly. But the Eighth Amendment prohibits only <u>deliberate</u> indifference, not negligence. *See Vasquez v. Davis*, 882 F.3d 1270, 1277-78 (10th Cir. 2018). Absent an allegation by Ms. Roe that Sheriff Mikesell knew of exisiting misconduct with regard to female inmates, the analysis of *Poore* does not compel a different result here.

Ms. Roe also apparently seeks to impose liability on Sheriff Mikesell for Mr. Minguela's sexual assaults (and for the other deputies' failure to protect her) because he was their supervisor. The simple allegation that Sheriff Mikesell had supervisory authority over the deputies is insufficient to state a plausible claim for section 1983 liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008). Rather, Ms. Roe must plead facts that show an affirmative, causal link between the Sheriff's conduct and the alleged constitutional deprivations. *See Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997). Thus, to state a claim against Sheriff Mikesell in his supervisory capacity, Ms. Roe must plead facts that show: (1) that Sheriff Mikesell was personally involved in the deprivation of her constitutional rights; (2) that his personal involvement caused the deprivations; and (3) that he acted with a culpable state of mind.

Sheriff Mikesell argues that the Second Amended Complaint fails to show that he was personally involved in the deprivation of Ms. Roe's constitutional rights. He further argues that even if it does, it fails to show that the rights he allegedly violated were clearly established. Prior to the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the showing of

personal participation of a prison or jail supervisor could be satisfied by factual allegations that the supervisor either personally engaged in the unconstitutional conduct or that he or she completely failed to supervise or train the actor. *Keith*, 843 F.3d at 838-39; *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). Although the Tenth Circuit has questioned whether this standard has tightened as a result of *Ashcroft*, it has recently declined to resolve the issue. *See Keith*, 843 F.3d at 838. Thus, the Court will assume that, despite *Ashcroft*, the standard remains unchanged. "[A] supervising prison [or jail] official may be liable where there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable." *Keith*, 843 F.3d at 838 (quoting *Houston v. Reich*, 832 F.2d 883, 888 (10th Cir. 1991).

According to the Second Amended Complaint, Sheriff Mikesell was responsible "for developing policies, procedures and training materials" at the jail and "ensuring at all personnel … were adequately trained on these policies and procedures throughout their tenure with the Teller County Sheriff's Department and/or Teller County." It is also alleged that Sheriff Mikesell failed "to train employees to recognize and/or report … indicia of harassment, intimidation, and/or inappropriate sexual contact." These allegations show that notwithstanding his responsibility, Sheriff Mikesell completely failed to train jail staff to recognize and prevent sexual misconduct with inmates. Such failure is closely related to Ms. Roe's alleged injuries arising from being sexually assaulted by Mr. Minguela. Thus, the Second Amended Complaint is sufficient to show Sheriff Mikesell's personal involvement, and inasmuch as he does not challenge any other element of supervisory liability, the Court finds that the allegations against him are sufficient to state a claim for supervisory liablity.

But again, Ms. Roe has not met her burden to show that it was clearly established that Sheriff Mikesell's actions would violate the constitution. The inquiry on this claim against Sheriff Mikesell is whether it is clearly established that a jail official, who does not have any knowledge of sexual misconduct between jail staff and inmates, violates the Eighth Amendment by failing to provide advance training to prevent sexual misconduct between jail staff and inmates. Ms. Roe has not provided the Court with any case that stands for that proposition. She again cites to *Ortiz*, *Keith*, *Tafoya*, *Gonzales*, and *Hovater*. Of these five cases, only *Keith, Tafoya,* and *Gonzales* recognize a constitutional deprivation, and all three of those cases involve situations where the supervising official had <u>actual</u> knowledge of prior sexual assaults. Because Ms. Roe has not alleged that Sheriff Mikesell had actual knowledge of prior assaults by Deputy Minguela or others, the Court cannot find that she has come forward with authority that clearly established Sheriff Mikesell's liability in such circumstance. Accordingly, the Court dismisses Ms. Roe's Eighth Amendment claim against Sheriff Mikesell.

### 2. Equal protection claims

Ms. Roes asserts Equal Protection claims against to co-worker deputies, Deputies Davidson and Turner, and Sheriff Mikesell in their individual capacities. Each of these defendants argues that they are entitled to qualified immunity. The Tenth Circuit has explained that sexual harassment and sexual assault claims asserted by inmates "are more properly analyzed under the Eighth Amendment" and not under the Equal Protection Clause. *Barney v. Pulsipher*, 143 F.3d 1299, 1312 n.15 (10th Cir. 1998). In light of the Court's disposition of the Eighth Amendment claims against these Defendants, Ms. Roe's Equal Protection claims fail for the same reasons. Therefore, Deputies Davidson, Robinson, Sloan, Bast, Gaffney, and Turner and Sheriff Mikesell are entitled to qualified immunity as to the Equal Protection claims asserted

against them.

### 3. Official capacity claims against Sheriff Ensminger, Sheriff Mikesell, and the Board

Sheriff Ensminger, Sheriff Mikesell, and the Board move to dismiss the 42 U.S.C. § 1983 official capacity claims asserted against them on grounds that Ms. Roe's injuries were not caused by any governmental policy or custom. Ms. Roe argues that Sheriff Ensminger, Sheriff Mikesell, and the Board failed to adequately train or supervise Mr. Minguela.

An official capacity claim, in all respects other than name, is a claim against the governmental entity employing the official. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Thus, the Plaintiffs' § 1983 official capacity claims constitute claims against Teller County and the Teller County Sheriff's Office ("Sheriff's Office"). As such, the official capacity claim against former Sheriff Ensminger is redundant. Indeed, under Federal Rule of Civil Procedure 25(d), when Sheriff Ensminger left office, his successor, Sheriff Mikesell, simply inherited the pending official capacity claims. Thus, the official capacity claim against Sheriff Ensminger is dismissed, and the Court will analyze whether the official capacity claims against the Board and Sheriff Mikesell have been sufficiently pled.

Section 1983 prohibits a person acting under color of law from violating another's rights guaranteed under the United States Constitution. The definition of "person" under § 1983 includes local government entities, such as counties, cities, and towns. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, local government entities are liable under §1983 "only for their own illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). The doctrines of vicarious liability and *respondeat superior* do not apply, and therefore, "[a] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *Monell*, 436

U.S. at 692). Rather, to establish a *prima facie* § 1983 claim against a governmental entity, a

plaintiff must produce sufficient evidence to show (1) the existence of a government policy or

custom, which (2) directly caused an injury to the plaintiff. *Id.*

As to the first requirement, a government policy is defined as "a course of action

consciously chosen from among various alternatives…." *Oklahoma City v. Tuttle*, 471 U.S. 808,

828 (1985); *J.B. v. Wash. County*, 127 F.3d 919, 924 (10th Cir. 1997). While it certainly includes

"formal rules or understandings—often but not always committed to writing—that are intended

to, and do, establish fixed plans of action to be followed under similar circumstances consistently

and over time," it also includes individualized decisions "tailored to a particular situation and not

intended to control decisions in later situations." *Pembaur v. City of Cincinnati*, 475 U.S. 469,

480-81 (1986); *J.B.*, 127 F.3d at 924. Whether an individualized decision is a government policy

depends on the authority of the decision-maker. If the decision-maker has final policymaking

authority for the government entity, all decisions made within the scope of that authority are

government policies under § 1983. *Simmons*, 506 F.3d at 1285-86. This is so because "[a]n act

by a [local government entity's] final policymaking authority is no less an act of the institution

than the act of a subordinate employee conforming to a preexisting policy or custom … whether

that action is to be taken only once or to be taken repeatedly." *Id.* at 1285.

Accordingly, a plaintiff may show a government policy or custom in the form of any of

the following ways:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a
> widespread practice that, although not authorized by written law or express
> [government] policy, is so permanent and well settled as to constitute a custom or
> usage with the force of law; (3) the decisions of employees with final
> policymaking authority; (4) the ratification by such final policymakers of the
> decisions—and the basis for them—of subordinates to whom authority was
> delegated subject to these policymakers' review and approval; or (5) the failure to

adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla.*, 627 F.3d 784, 788 (10th Cir.2010).

### 1. Official capacity claims against the Board

The Board argues that the claims against it should be dismissed on two grounds. First, it argues that it is not vicariously liable for the actions of the Sheriff or his deputies because the Board and the Sheriff's Office are separate legal entities. Second, it argues that the Second Amended Complaint fails to allege that one of its policies or customs caused Ms. Roe's injuries. Ms. Roe argues that the Board and the Sheriff's Office are each proper parties to this lawsuit. She also argues that the Second Amended Complaint shows the Board knew was aware of a substantial risk of harm to the inmates at the jail but took no action.

The Court need not address the Board's first argument because the Second Amended Complaint does not sufficiently allege that the Board was aware of a substantial risk of harm to inmates at the jail. The Second Amended Complaint merely offers conclusory assertions that the Board "knew" about Mr. Minguela's conduct and that the jail's layout made it possible for him and other guards to view inmates in the shower, restroom, and their cells during intimate moments. A simple allegation that the Board "knew" something lacks any articulation of the facts that demonstrate what information was presented to the Board that created such "knowledge" and when. The Second Amended Complaint does not allege that members of the Board witnessed Mr. Minguela's conduct, personally visited the jail and saw its layout (much less perceived the significance of that layout), or received any reports, complaints, or other information about his conduct or the jail's layout. Therefore, the Second Amended Complaint fails to state a claim against the Board.

### 2. Official capacity claims against Sheriff Mikesell

Sheriff Mikesell argues that the official capacity claims asserted against him should be dismissed because the Second Amended Complaint fails to allege the existence of a formal custom or policy. Ms. Roe argues, among other things, that the Second Amended Complaint shows that the Sheriff's Office failed to train jail staff as to appropriate relations between guards and inmates.

A local government entity may be liable for failing to train its employees "where there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable." *Houston v. Reich*, 832 F.2d 883, 888 (10th Cir. 1991). According to the Second Amended Complaint, the Sheriff's Office failed "to train employees to recognize and/or report … indicia of harassment, intimidation, and/or inappropriate sexual contact." Although sparse, construed in the light most favorable to Ms. Roe, this allegation is sufficient to allege a complete failure to train. Accordingly, the Court denies Sheriff Mikesell's motion to dismiss the official capacity claim against him.

## C. Request for leave to proceed under pseudonyms

Generally, courts disfavor the use of pseudonyms to conceal the true identity of litigants, but it is permitted under limited circumstances. *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118, 1125 (10th Cir. 1979). For example, "fictitious names are allowed when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses." *Doe v. Blue Cross & Blue Shield United of Wisc.*, 112 F.3d 869, 872 (7th Cir. 1997). In deciding whether to allow a party to proceed under a pseudonym, a court weighs that party's interest in privacy against the public's interest in knowing the party's identity. *Coe v. U.S. Dist. Ct.*, 676 F.2d 411, 418 (10th Cir. 1982).

Victims of rape and other forms or sexual assault are often stigmatized in a manner that

affects their educational, employment, and social prospects. *See* Paul Marcus & Tara L. McMahon, *Limiting Disclosure n Rape Victims' Identities*, 64 S. Cal. L. Rev. 1020, 1030-36 (1991). The Court has previously denied that portion of the Roes' motion that sought to seal the entirety of this action from public view **(# 99)**, ensuring that the public is fully apprised of the nature of the allegations herein, but the Court finds that the Roes' interests, as victims of sexual assault, have shown good cause to proceed under pseudonyms here. Those privacy interests outweigh the public's interests in identifying the Roes by name. Accordingly, the Roes may continue to pursue this action under their pseudonyms. However, the Roes are cautioned that should this matter go to trial, that trial will be fully open to the public, and thus, their identities will likely become known at that time.

**D. Consolidation**

On December 3, 2017, another Jane Roe (at least, the Court assumes that this Jane Roe is distinct from the Jane Roes in this case; the use of numerals to distinguish Roe plaintiffs instead of separate anonymous names complicates the Court's ability to identify individuals) commenced an action against the same Defendants herein in *Roe v. Minguela, et al.*, D.Colo. Civ. Case No. 17-cv-02901-WYD-KLM. The factual allegations and claims in both cases are similar, and the same counsel represents the plaintiffs in both cases. The Defendants here move to consolidate the later *Roe* case with this action.

The Court notes that D.C. Colo. L. Civ. R. 3.2(b) provides that "related cases" are those which "have common facts and claims" and share a common party or are filed by the same attorney. Under D.C. Colo. L. Civ. R. 40.1(d)(4), the Court may, in its discretion, assign a later-filed "related" case to the judicial officer assigned to the earlier-filed one. Relatedness triggers an assessment of cases by the presiding judges, but it does not authorize a party to seek transfer

of matter from one judge to another.  *Id.*

Consolidation is not addressed by the Local Rules, but instead is governed by Fed. R. Civ. P. 42(a).   The decision as to whether to consolidate cases is confined to the sound discretion of the trial court to decide how the business of the court may be dispatched with expedition and economy while providing justice to the parties.  *Breaux v. American Family Mut. Ins. Co.*, 220 F.R.D. 366, 367 (D. Colo. 2004).

Had the two cases herein been filed more closely in time, and the motion to consolidate filed shortly thereafter, it might have been appropriate to grant the motion and administer the cases jointly (if not outright consolidating them).   However, based on the rulings set forth above, the circumstances have changed significantly.   As a result of these rulings, this action has been shorn of most of the Roes' claims against most of the Defendants.   The Roes' respective claims against Mr. Minguela for the particular assaults he committed against each woman remain, but those claims turn on entirely different sets of facts and may very well warrant separate trials.[7] Adding another Jane Roe's Eighth Amendment claim against Mr. Minguela would not improve the situation.   Indeed, consolidation could actually be harmful, rather than helpful, in addressing efficiency concerns.   As discussed above, Ms. Roe #1 also maintains an official capacity claim against, effectively, the Teller County Sheriff's Office, but Ms. Roe #2 does not.   Thus, consolidation might yield some efficiencies as to resolving Ms. Roe #1's claims, but might add

---

[7]     Arguably, Jane Roe #1 might seek to introduce evidence of Mr. Minguela's acts against Jane Roe #2 (if such evidence can overcome a Fed. R. Evid. 404(b) objection), but the admission of acts against Ms. Roe #2 in Ms. Roe #1's trial would necessarily come with a limiting instruction, telling the jury that they can only consider evidence relating to Ms. Roe #2 for specific, narrow purposes.  The same would likely be true if Ms. Roe #2 sought to introduce evidence of Mr. Minguela's actions against Jane Roe #1.  If the Court were to try both Roes' claims jointly, that limiting instruction becomes far more complicated, and perhaps even impossible for a jury to comprehend.

complications regarding the handling of Ms. Roe #2's claim.

The Court is not persuaded that the interests of efficiency are best served by consolidation. The parties are free to structure the discovery in the two cases to maximize efficiency – *e.g.* to serve a single set of written discovery on the Teller County Sheriff's Office (the responses to which may be used in both cases) or to depose Mr. Minguela on all three plaintiff's claims in a single sitting. But the Court is not persuaded that consolidation is warranted and the motion is denied.

## E. Deputy Minguela's request for counsel

Finally, Mr. Minguela moves, *pro se*, for appointment of *pro bono* counsel to assist him in defending against the Roes' claims. He states that he has contacted many attorneys but "can't afford any," as he is subject to "the requirements of my sentence" – he was convicted of unlawful sexual conduct in 2016 – including "paying for therapy, court costs, polygraph, [and] criminal defense attorney." He states that this case is "complex litigation" that "requires special legal knowledge" that he does not have and that his "ignorance of the law will cause the proceedings to move very slowly."

The Court finds it appropriate to grant Mr. Minguela's motion. As the Court understands it, Mr. Minguela maintains that the sexual contact he had with the Roes was consensual. *See* "Former Teller County Guard to Face Sexual Misconduct Charge," Colorado Springs *Gazette*, Jan. 8, 2016. The 10th Circuit has recognized that, in certain circumstances, an inmate's consent to sexual contact with a prison guard can vitiate Eighth Amendment liability, notwithstanding the fact that "the power dynamics between prisoners and guards make it difficult to discern consent

24

from coercion." *Graham v. Sheriff of Logan County*, 741 F.3d 1118, 1125-26 (10th Cir. 2013)[8];
*Baca v. Rodriguez*, 554 Fed.Appx. 676, 677 (10th Cir. 2014). Without intending to offer any
opinion as to the merits of the underlying facts of this case, it is unlikely that Mr. Minguela will
be able to thread the narrow factual needle of proving a defense of consent without the assistance
of counsel.

This is not to say that Mr. Minguela has a right to the appointment of counsel or that any
*pro bono* counsel will agree to represent him. The decision to accept a *pro bono* appointment
rests with the attorney. If no attorney wishes to assist Mr. Minguela without charge, the Court
will not compel them to do so and Mr. Minguela will continue to defend himself *pro se* in this
matter. Moreover, although the Court will act expeditiously in canvassing its panel of potential
*pro bono* attorneys, it does not intend to delay further proceedings in this matter in the interim.
In other words, Mr. Minguela remains obligated to diligently continue his defense of this case
*pro se*, unless and until an attorney agrees to enter an appearance on his behalf.

## CONCLUSION

For the foregoing reasons

1. All claims by Plaintiff Jane Roe #2 against all Defendants other than Mr. Minguela are
   deemed voluntarily dismissed;

2. The Board's Motion to Dismiss First Amended Complaint (**#57**) is **DENIED AS MOOT**;

3. Steve Davidson's Motion to Dismiss (**#72**), Tyler Turner's Motion to Dismiss (**# 73**), and
   the Board of County Commissioners Motion to Dismiss (**# 75**) are **GRANTED**, and all
   claims against these Defendants are **DISMISSED**;

---

[8] The same case suggests that the Roes' claims against Mr. Minguela should be construed
as claims for Excessive Force under the Eighth Amendment and specifies the elements to be
proven.

4. Mike Ensminger, Jason Mikesell, Elizabeth Robinson, David Sloan, Patrick Bast, and Jaclyn Gaffney's combined Motion to Dismiss **(#76)** is **GRANTED IN PART** and **DENIED IN PART**; it is granted insofar as all claims asserted against Mike Emsinger, Elizabeth Robinson, David Sloan, Patrick Bast, and Jaclyn Gaffney are **DISMISSED**, and all individual capacity claims against Jason Mikesell are **DISMISSED**, but is denied insofar as the claim against Jason Mikesell in his official capacity of Teller County Sheriff will proceed;

5. The Plaintiffs' Motion to File under Seal and Request to Proceed Using Pseudonyms **(#2)** is **GRANTED IN PART**, insofar as the Plaintiffs may continue to proceed as Jane Roe #1 and Jane Roe #2;

6. The Defendants' Motion to Consolidate **(# 98)** is **DENIED**;

7. Deputy Minguela's Motion for Appointment of Counsel **(# 97)** is **GRANTED**, and the Clerk of the Court shall canvass the *pro bono* panel for an attorney willing to represent Mr. Minguela in this action without cost.

Dated this 30th day of August, 2018

BY THE COURT:

_____

Marcia S. Krieger
United States District Court